THE STATE of Ohio, Appellee,

v.

WHITT, Appellant.

[Cite as *State v. Whitt* (1991), 68 Ohio App.3d 752.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59077.

Decided Oct. 3, 1991.

*Stephanie Tubbs Jones*, Prosecuting Attorney, *Mary Haas* and *Anthony Bondra*, for appellee.

*Hyman Friedman*, Cuyahoga County Public Defender, and *Robert M. Ingersoll*, for appellant.

JOHN F. CORRIGAN, Judge.

Defendant-appellant John Whitt appeals from his convictions for three counts of gross sexual imposition, contending that the trial court deprived him of a fair trial by admitting expert opinion evidence in contravention of the Supreme Court's pronouncements in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. As we are unable to conclude that admission of this evidence was harmless beyond a reasonable doubt, we reverse the judgment of the trial court and remand the case for further proceedings.

I

On September 5, 1989, defendant was indicted for three counts of attempted rape of Nicole A., a child under thirteen years of age. Defendant pleaded not guilty and the matter proceeded to a bench trial on November 6, 1989.

For its case, the state presented the testimony of Nicole A.; her aunt, Mary Jo Harmon; Nicole's mother, Deborah Harmon; social worker Karen Schmidt; and Det. Gail Buddie.

Eight-year-old Nicole, after being determined competent to testify, stated that defendant was her downstairs neighbor and that he used to babysit her and her younger sisters while her father drove her mother to work, and on other occasions. Nicole further testified that on numerous times, when defendant was babysitting her, he inserted his finger into her "pee pee," and twice inserted his "dick" into her "pee pee," and that defendant once bit her on the buttocks. Nicole then stated that she reported these incidents to her Aunt Mary Jo the following summer, after her family had moved and was living with her Aunt Mary Jo and her grandmother.

Mary Jo Harmon testified that she and Nicole's mother, Deborah Harmon, are sisters and that from June 1989 through October 1989, she, Deborah and Deborah's children lived at the home of Mary Jo's and Deborah's mother. According to Mary Jo, in July 1989 while she and Nicole were working in the kitchen, Nicole asked her whether it was a sin for children to have sex. In response, Mary Jo asked Nicole what was wrong, and the child began to cry, then told Mary Jo that someone had inserted his finger into her "pee pee" and bitten her buttocks. Mary Jo reported the incident to her mother who advised that Mary Jo not pursue the subject any further that day. On the following day, Mary Jo asked Nicole the name of the person who had touched her, and Nicole stated that it was defendant, the man who used to live downstairs from her family. Mary Jo then reported the incident to Nicole's mother, Deborah Harmon.

Deborah Harmon testified that from January 1987 through March 1989, she, her husband, and their daughters lived on W. 104th Street, and that defendant lived downstairs from them from March 1988 through December 1988. Harmon also indicated that she worked as a waitress at George's Kitchen from June 1988 through October 1988, and that during this time defendant watched her daughters five days per week while her husband drove her to work. Thereafter, Harmon stated, in July 1989, Mary Jo disclosed

Nicole's reports of abuse to her, and she took the child to Parma Community General Hospital[1] and contacted the Cleveland Police.

Karen Schmidt, a social worker with the Sex Abuse Unit of the Department of Human Services testified that she has a master's degree in social work and that she has been with the department since 1985, and has worked with approximately three hundred eighty families through the Sex Abuse Unit. Schmidt further testified that she was present on July 27, 1989 when Detective Buddie of the Cleveland Police interviewed Nicole in connection with this matter, and that her role in being present was to assess whether abuse had actually occurred. Schmidt stated that during this interview, Nicole reported, and also indicated in drawings, that defendant had put his finger into her "pee pee," and had touched her with his "dick." Schmidt then opined that Nicole had in fact been the victim of sexual abuse, that Nicole was credible, and that based upon her experience, only one percent of the accusations of child abuse are baseless.

Detective Buddie next testified that she had been assigned to the Police Sex Crimes Unit for approximately six months when she received the police report prepared in connection with this matter. Buddie further stated that she interviewed Nicole, with Schmidt present, and that Nicole indicated that defendant put his "dick" into her "pee pee" on two occasions, and put his finger into her "pee pee" on numerous other occasions. Buddie then opined that Nicole's disclosure was credible and consistent, and that Nicole had in fact been victimized. Finally, Buddie opined that in the eighty to one hundred cases she has seen, there was insufficient information in fifteen cases, and the child accuser lacked credibility in three cases.

Defendant elected to present evidence and he presented the testimony of his sister Millie Bowen, and also testified in his own behalf.

Bowen testified that she has three children ages four, seven, and fourteen, and that there have never been problems with defendant and her children. She further stated that defendant was extremely busy with work and school.

Defendant likewise testified that he was extremely busy due to work and school, and that he had watched Harmon's children only two or three times. Defendant denied that he had touched Nicole as alleged. Finally, defendant testified that the children were often left alone, and that he had given Harmon money which she subsequently used to buy drugs.

---

1. The emergency room report indicates that, upon an external examination, the vaginal introitus was not inflamed, the hymen was intact, and that neither discharge nor "other symptoms" were present.

Thereafter, the court found defendant guilty of three counts of gross sexual imposition, remarking that it was a very difficult case.

Defendant now appeals his convictions.

## II

"John Whitt was denied his due process right to a fair trial by the admission of impermissible evidence in the form of the opinions from the state's expert witnesses that the child victim in the case at bar was credible and that the alleged sexual abuse had occurred."

Within this single assignment of error, defendant asserts that the trial court erred in permitting Schmidt and Buddie to testify that the alleged sexual abuse did in fact occur, that Nicole had credibly implicated defendant, and that in the majority of instances, children's reports of sexual abuse are credible. Defendant also asserts that the trial court erred in permitting Buddie to testify that Nicole had credibly named defendant as her assailant.

In *State v. Boston, supra,* the Supreme Court held in its syllabus that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." The court stated at 119, 545 N.E.2d at 1231–1232:

" * * * [I]n child abuse cases, experts, properly qualified, might include a priest, a social worker or a teacher, any of whom might have specialized knowledge, experience and training in recognizing occurrences of child abuse.

"The question that arises * * * is whether the testimony * * * is admissible. If such testimony is admissible, then the question becomes whether *all* or just *part* of such testimony should have been admitted." (Emphasis *sic.*)

The court then held that, in general, expert testimony in child abuse cases is proper, *id.* at 120, 545 N.E.2d at 1232, and further stated that as regards prior identification:

" * * * [A] prior identification that is found reliable by a trial judge falls outside the hearsay rule if it is shown that the child-identifier, either at trial or a hearing, had been or is subject to cross-examination under oath concerning the identification statement and the child responds willingly to questions about the previous identification. If these conditions are met *and* the judge finds the statement of prior identification reliable, then the statement of the declarant can be admitted at trial through a third person to whom or in whose presence the identification was made. See, also, R.C. 2945.55." *Id.* at 124, 545 N.E.2d at 1236.

Concerning the issue of the existence of abuse, the *Boston* court stated:

" * * * [I]t follows that an expert's opinion testimony on whether there was sexual abuse would aid jurors in making their decision and is, therefore, admissible pursuant to Evid.R. 702 and 704. Dr. Asch's opinion testimony that Cynthia was sexually abused was properly admitted." *Id.* at 128, 545 N.E.2d at 1239.

As to the veracity of a child's statements, the *Boston* court held that:

" * * * [A]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. We further find that it was error, and more than harmless, for the trial court to have permitted Dr. Asch to render an opinion on the veracity of Cynthia." *Id.* at 129, 545 N.E.2d at 1240.

Thus, these pronouncements provide the framework within which defendant's assignment of error shall be considered.

## A

### Nicole's Prior Statements which Identify Defendant as the Perpetrator

■ In this case, the testimony of both Karen Schmidt and Detective Buddie included statements, made by Nicole during the interview, which identified defendant as the perpetrator. In addition, Nicole testified at trial, subject to cross-examination, regarding her identification of defendant, and responded willingly to questions concerning her previous identification of defendant during the interview with Schmidt and Buddie. Thus, because the court subsequently found Nicole's testimony to be reliable, Nicole's identification statements were properly admitted through both Schmidt and Buddie.

## B

### Experts' Statements that Abuse Had Occurred

■ Pursuant to *State v. Boston, supra*, at 128, 545 N.E.2d at 1239, expert opinion testimony that abuse occurred was held admissible where one expert conducted a physical examination of the alleged victim, then noted physical manifestations of abuse, and a second expert conducted a psychological examination and noted behaviors which were found to be typical of abuse victims. *Id.* at 120, 545 N.E.2d at 1232. However, in this case no medical testimony was offered and no mental examinations were conducted. Thus, no facts were offered in support of the expert testimony that abuse had occurred, and Evid.R. 705 was violated. See Staff Notes to Evid.R. 705 ("Rule 705 requires disclosure of the underlying facts or data prior to the rendition of the expert's opinion."). Accordingly, this evidence was erroneously admitted here.

## C

### Experts' Statements Regarding the General Credibility of Abuse Accusations

In this case, Schmidt testified, upon questioning by the court, that child abuse accusations were false only one percent of the time. Similarly, Buddie stated, in response to a question by the court, that in fifteen out of eighty to one hundred cases she has seen, there was insufficient evidence to make a determination of whether abuse actually occurred, and in three of these cases, the accusation was actually false. As both of these statements were relevant only to the issue of credibility, the statements were clearly improper under *Boston*. However, in finding defendant guilty, the trial court subsequently stated on the record that it found such projections to be "incredible." Thus, the admission of these statements was harmless beyond a reasonable doubt, as the statements clearly were not a basis of the court's finding of guilt. Cf. *State v. White* (1968), 15 Ohio St.2d 146, 44 O.O.2d 132, 239 N.E.2d 65, paragraph two of the syllabus.

## D

### Expert Testimony Regarding the Credibility of Nicole's Accusation

Schmidt suggested that in her opinion, Nicole was credible. In addition, Buddie testified that she believed that Nicole was credible and consistent. This testimony was clearly improper pursuant to *Boston, supra,* 46 Ohio St.3d at 129, 545 N.E.2d at 1240, and the syllabus.

Following introduction of this testimony, the court remarked as follows:

"What we have as I see it, we have is in effect two witnesses. We have Nicole and we have the Defendant.

"That's basically it."

However, the court further remarked that it was a "very difficult case," and that it didn't think "there was really anything to destroy * * * [defendant's] credibility." These remarks, when considered in light of the improper opinion evidence that abuse actually occurred, preclude this court from finding that introduction of the improper credibility evidence was harmless beyond a reasonable doubt.

Accordingly, we must reverse the judgment of the trial court and remand this case for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DYKE, P.J., and HARPER, J., concur.

HARPER, Judge, concurring.

I concur in the majority's resolution of appellant's assignment of error but wish to expound on their reasoning for the reversal and remand of the action.

In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, the Supreme Court of Ohio faced the difficult challenge of attempting to formulate evidentiary guidelines for use in child abuse cases. The court, in recognizing that their opinion was not going to be uncontested, encouraged "academic intercourse."

The encouragement resulted in an amendment to the Ohio Rules of Evidence. On July 1, 1991, Evid.R. 807, child abuse hearsay exception, became effective. I mention the rule in my concurring opinion even though it has no bearing on the instant appeal because I wish to underscore the impetus behind the amendment—the difficulty in ruling on the admissibility of testimony in child abuse cases. Any decision which deals with this issue should, therefore, be succinct.

Returning to the within action, I primarily focus on that portion of the majority's opinion which addresses the expert testimony regarding the credibility of Nicole's accusation. Both Schmidt and Buddie testified that Nicole was credible. Although the majority correctly identifies this testimony as clearly improper pursuant to *Boston, supra,* it is not stated why the testimony is improper.

In *Boston,* the court found that such testimony was not only improper, but that it was "egregious, prejudicial and constitutes reversible error." *Id.* at 128, 545 N.E.2d at 1240. The court at 129, 545 N.E.2d at 1240, found that opinions as to the truthfulness of a child's statements:

" * * * acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility. * * * In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses."

It should furthermore be stressed that the allowance of this testimony at trial is "more than harmless" error. *Id.* at 129, 545 N.E.2d at 1240.[2]

---

**2.** This court recognized the same principle in a pre-*Boston* case. In *State v. Cottrell* (Feb. 19, 1987), Cuyahoga App. No. 51576, unreported, 1987 WL 6799, we found that it was an abuse of discretion to permit an expert witness to express an opinion as to the truthfulness of a specific witness since "it is not beyond the experience, knowledge, or comprehension of an ordinary factfinder to decide whether a child's accusations of sexual abuse were truthful." *Id.* at 14.

In conclusion, even if the trial court commented on its nonacceptance of or disregard of this testimony, the "more than harmless" error would still remain.