[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 469 
Defendant Claude E. Coffman, Sr. appeals the judgment and sentence of the Mercer County Common Pleas Court following a jury trial and conviction for two counts of gross sexual imposition in violation of R.C. 2907.05 (A) (4).
Defendant was indicted for engaging in sexual contact with his seven-year-old grandson, Shaun Coffman, two separate times over the course of the same evening. Count one of the indictment was based on the allegation that on or about January 4, 1997, defendant placed his hand onto Shaun's penis, began rubbing it, and asked Shaun if it "felt good." Count two of the indictment was based on the allegation that defendant caused Shaun to place his hand on defendant's penis and rub it for defendant's own sexual gratification.
From the summer of 1996 through early 1997, Shaun spent a significant amount of time with defendant. Defendant often took Shaun along to help him at work, and Shaun was paid for this help. Shaun frequently spent weekends at defendant's apartment, and evidence at trial indicated that they may have slept in the same bed on at least some occasions. Shaun's father (defendant's son) and mother expressed some concern about the sleeping arrangements, but generally approved of the time Shaun spent with defendant.
Shaun's contact with defendant abruptly ceased the first Saturday of January 1997. That day, defendant got into an argument with Shaun's parents, who felt that Shaun was spending too little time at home and too much time with defendant. As a result of the argument, Shaun's parents and defendant stopped speaking to one another. Shaun did not visit or see defendant again.
On approximately February 25, 1997, Shaun's parents made a report to the Mercer County Department of Human Services. His parents asserted that on the previous day, Shaun had informed them that defendant had touched his genitals and that he had seen and touched defendant's genitals. On February 27, *Page 470 
1997, Detective Pat Elking and social worker Roberta Donovan conducted a brief interview of Shaun and began an investigation of defendant. On July 15, 1997, defendant was indicted by the grand jury for two violations of R.C. 2907.05(A)(4). A trial was conducted December 16 to 18, 1998, and the jury returned a verdict of guilty. Defendant's motion for new trial was denied on January 23, 1998. Defendant was sentenced to two consecutive terms of three years each on February 27, 1998. Defendant appeals and asserts the following two assignments of error:
"Assignment of Error I: The court erred when it permitted, over the objection of defendant, the prosecuting attorney to claim that it was his job to seek justice rather than convictions thereby inferring that in exercising the power of the state, he had information which was sufficient to obtain a conviction.
"Assignment of Error II: The court erred when it permitted the police officer to testify, over the objection of the defendant, that in his eighteen (18) years of experience, he had never known a child to lie about being sexually abused and further over objection, he was allowed to testify that in his experience, one half of the victims are totally honest the first time he talks to them."
Defendant argues in his first assignment of error that the following portion of the prosecuting attorney's final rebuttal argument was improper:
"MR. HOWELL: * * * But I also want to tell you that my job as Prosecutor, Mr. Poppe is trying to make it sound like I'm trying to lead this witness, create this case. My job as the prosecuting attorney, Itook an oath not just to convict but to fairlyenforce the law. In fact, ladies and gentlemen, Ihave an obligation to make sure that innocent peopledon't go to jail.
"MR. POPPE: Objection, your honor.
"MR. HOWELL: And, yes, I talked —
"THE COURT: What's your objection?
"MR. POPPE: Your Honor, he's giving testimony. That is improper.
"THE COURT: Objection is overruled. Mr. Howell, you may continue.
"MR. HOWELL: Thank you, your honor. It's my job to talk to these witnesses, not to coach them, not to make them say things. Every good prosecutor talks to witnesses. And you know why? Because we want to makesure that they're going to testify to the truth andinnocent people don't go to jail. That's why we dothat.
 "Ladies and gentlemen, I'm proud to be the prosecuting attorneyin this case. And once again, I thank you for your time. Thank you." (Emphasis added.) *Page 471 
Defendant contends that these remarks improperly indicated to the jury that the prosecutor personally believed in the defendant's guilt.
The relevant inquiry regarding a prosecutor's improper statements during closing argument is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984),14 Ohio St.3d 13, 14, 14 OBR 317, 818, 470 N.E.2d 883, 885. This inquiry is guided by consideration of four factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. Sidney v. Walters (1997), 118 Ohio App.3d 825, 829,694 N.E.2d 132, 134-135. Finally, courts must also be mindful of the general maxim that prosecutorial misconduct is not grounds for reversal unless it so taints the proceedings that it deprives the defendant of a fair trial. See, e.g., State v. Phillips
(1995), 74 Ohio St.3d 72, 90, 656 N.E.2d 643, 661-662.
We agree with defendant that the remarks improperly indicated the prosecutor's personal opinion regarding the defendant's guilt. The state argues in response that the prosecutor was required to make the challenged statements to rebut "derogatory comments" by defense counsel and that defense counsel "opened the door" to arguments about the special duties imposed on prosecutors by impugning the prosecutor in his own closing argument. The state thus contends that its remarks were invited by defendant and were not improper. See, e.g., State v. Uhler (1992), 80 Ohio App.3d 113,124, 608 N.E.2d 1091, 1097-1098.
A thorough reading of the record does not support the state's claim. The following excerpt from closing argument is the closest defense counsel comes to a personal attack:
"Now if the purpose of an investigation is only to find evidence for which to convict a person, then you obviously don't want to worry about that. But if the purpose of your investigation is to find the truth, then you obviously need to be looking at those kinds of things."
While this argument clearly attacks the validity of the state's investigation, we are not persuaded that it was a personal attack on the prosecutor's integrity. Furthermore, the prosecutor chose not to object. An objection is the proper remedy for defense misconduct during closing argument. United States v. Young
(1984), 470 U.S. 1, 13, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1, 11. Moreover, even if defendant's argument did invite a response from the prosecutor, that response was not proportional. We therefore find the state's invocation of the invited-reply doctrine unpersuasive, and conclude that the trial court incorrectly overruled defendant's objection to the challenged remarks. Standing alone, it is *Page 472 
unlikely that these remarks would rise to the level of reversible error. Unfortunately, they must be considered in the context of additional assertions raised in defendant's second assignment of error.
Defendant's second assignment of error asserts that the trial court improperly allowed the state to address the credibility of the victim and defendant. Under the rule of State v. Boston
(1989), 46 Ohio St.3d 108, 129, 545 N.E.2d 1220, 1240-1241, an expert witness is precluded from testifying as to the expert's opinion of the veracity of the statements of a child declarant. Here, the state offered the testimony of Detective Patrick Elking, an eighteen-year veteran police officer, who investigated defendant and who was present at the initial interview of defendant's grandson Shaun. However, the prosecutor's questions repeatedly attempted to elicit testimony from Detective Elking about his experience in other cases, with the apparent purpose of improperly bolstering Shaun's credibility:
"Q: In all the cases that you've interviewed these children who have had allegations of sexual abuse against them, have all of those cases resulted in indictments against the defendants?
"A: No, by no means.
"Q: So I assume in that answer that there have been some that have not resulted in indictments. Right?
"A: That's correct.
"Q: Have there been some of those interviews where it was later found out that the child was being misinterpreted or was lying?
"A: I don't remember one where a child was ever lying.
"MR. POPPE: Objection as to relevance, your Honor.
"THE COURT: Mr. Howell.
"MR. HOWELL: Your Honor, this goes to the questioning of the child in this particular case, and I believe Mr. Poppe, throughout his voir dire and his opening statement, has alleged the manner in which these children or this child was interviewed. I think it's relevant.
"THE COURT: Objection is overruled.
"THE WITNESS: Again, I don't remember a child Shaun's age lying. We have had instances where it was confirmed 16-and 17-year-old children have lied."
Admission of this testimony, over defendant's proper objection, was erroneous. Whether the victims in previous cases which Detective Elking has investigated were truthful and accurate is not relevant to the truth or accuracy of Shaun's *Page 473 
account of the incident at issue in this case. As such, the testimony seems clearly intended to indirectly introduce the officer's opinion as to the credibility of the prosecuting witness.
The prosecution's examination of Detective Elking continued with the following colloquy:
"Q: Now, you've interviewed more than just children witnesses, haven't you?
"A: Yes, I have.
"Q: In fact you've interviewed quite a few adult alleged criminals. Right?
"A: Yes, I have.
"Q: Who do you generally find lie more that the other?
"A: Obviously, the defendants. I've never had anyone even near Shaun's age where we knew for a fact they were lying.
"MR. POPPE: Objection, your Honor. Again, he is trying to establish credibility through testimony; and he has not been qualified as an expert to give any such testimony in credibility. And that is not permissible for a witness to give testimony about credibility in a case as such because that's a jury question, and it's something that is done through the jury instruction.
"THE COURT: I'm going to sustain the objection. You can question this witness about the manner in which he has interviewed this particular-conducted interviews in this particular case, but to the extent that the testimony lends itself as to the truthfulness of any particular statements, specifically, the 16-year-old or the youth in this case, I'm going to sustain the objection and instruct the jury to disregard the defendant's answer.
"MR. HOWELL: Thank you, your Honor."
Here, the court properly sustained defendant's objection. Detective Elking not only repeated his testimony about child abuse victims always telling the truth, but also attempted to testify that defendants often lie. Such testimony is unquestionably improper.
However, we note that the court's curative instruction contained a fault of its own. The court instructed "the jury to disregard the defendant's answer." The challenged testimony was that of a prosecution witness, not that of the defendant. While in the broader context of the testimony and the trial (especially considering the general jury instructions at the close of the case) we believe that the misstatement was a minor error, we do believe that it may have dampened the effectiveness of the curative instruction.
The prosecution made a third attempt to improperly bolster Shaun's credibility at the close of Detective Elking's direct examination: *Page 474 
"Q: Now, Detective Elking, Mr. Poppe raised an issue in his opening statement about the child, Shaun, making disclosures at separate times, perhaps inconsistent.
"Has it been your experience over all these years that you've interviewed children in these types of cases for them to make a gradual disclosure?
"MR. POPPE: Objection, your Honor.
"THE COURT: Basis?
"MR. POPPE: My objection is, your Honor, he's calling for something as if it were an expert witness testifying. There's been no foundation laid for him to be an expert.
"THE COURT: Mr. Howell.
"MR. HOWELL: Your Honor, I think I've laid a foundation sufficient so that he can render what his experience has been with these children, especially when Mr. Poppe has raised the issue about how Mr. Elking and Roberta Donovan inappropriately interviewed this child.
"THE COURT: I'm going to allow him to answer this question, but we need to move along and focus on his examination of the victim in this case.
"A: Yes. I would say that approximately half of the victims will be totally honest the very first time you talk to them. The other half will disclose in stages as they feel secure or comfortable enough to talk about it, particularly to a stranger."
While a question about the the tendency of child witnesses to disclose in stages is not itself improper, it is clear on this record that the question was yet another attempt by the state to include Detective Elking's opinion testimony regarding the truthfulness of child witnesses in general, and hence the child in this case in particular. Detective Elking's response thus contains the permissible testimony that child abuse witnesses often disclose their stories in stages, but also impermissibly states that those witnesses always tell the truth.
The state argues that this testimony was a proper rebuttal to the defendant's implication that the investigation was untrustworthy. Specifically, the state contends that defendant's voir dire and opening statement "opened the door" to Detective Elking's testimony on direct by indicating that the investigation in the case was perfunctory and untrustworthy.
In voir dire, defense counsel questioned the venire on their beliefs regarding the possibility of false memories being planted in children's minds by improper questioning. At one point, counsel does imply that this might be a false memory syndrome case, although he does not say it directly. No direct evidence *Page 475 
regarding false memory syndrome was presented at trial. This clearly constituted improper trial conduct on the part of defense counsel that the trial court should have perhaps monitored more carefully. The failure to do so may well have instigated some of the problematic testimony and comments now at issue on appeal.
Moreover, while most of defendant's opening statement merely relates defendant's history to the jury, there are two distinct passages that raise questions about the investigation into Shaun's claims:
"The next testimony that's very questionable is people who then talk to a child and then suggest things to a child, and then talk to the child again, and talk to the child again, and talk to the child again, and talk to the child again over a period of time until the story becomes something that cannot be recognized as truth.
"We believe the evidence will then show that back by the time that we get to January, February, March, April, April 18th, that then the story is changing * * *. But this is the testimony you're going to have to be most careful about, because this is testimony that's reported by Lena. We're not talking about something that was reported to the police by Shaun. We're talking about something that was reported to the police by Lena to Officer Elking.
"When you hear the testimony, you're going to see that there's been a lot of different time sequences, and the thing that we're going to be asking you to look at and to help us try to figure out is, why is there one story that occurs in January, which is just a matter of being upset `because you didn't bring him home when you were supposed to bring him home, and the next communication is through police two months later, which says, `You've touched this child in a certain manner.' And then another two months later than that, there is, `Now we're mad because you touched him in a different manner in a different way.'"
These statements may have "opened the door" to some of Detective Elking's testimony (such as the tendency of child victims to disclose their stories in stages, noted earlier), but they certainly do not open the door to all of it. In short, most of the testimony elicited from Detective Elking was a disproportionate response to defense counsel's questions in voir dire and opening statement.
In State v. Whitt (1991), 68 Ohio App.3d 752, 758,589 N.E.2d 492, 495-496 the Court of Appeals of Cuyahoga County faced a similar situation. In that case, a social worker testified that child abuse accusations were false only one percent of the time. Additionally, the detective who worked on the investigation testified that only three of the eighty to one hundred cases of child abuse she had worked on involved false accusations. *Page 476 
Like the testimony at issue in Whitt, Detective Elking's testimony effectively stated that all children of Shaun's age who allege sexual abuse are telling the truth, to compel the conclusion that Shaun's allegations must be truthful as well. As such, the testimony had essentially the same purpose as the testimony deemed inadmissible in State v. Boston. The fact that Detective Elking's testimony is couched as a factual observation rather than an opinion does not make it any more admissible.
In Whitt, the court concluded that the challenged statements were inadmissible under Boston, but determined that the erroneous admission of the testimony was harmless. However, Whitt was tried to the court rather than to a jury, and the judge stated on the record that he did not believe the testimony. Here, we are faced with a jury trial, a general verdict, and similar prejudicial statements admitted over vigorous and proper objection. The Whitt
court, in support of its conclusion that the error was harmless, relied upon the greater latitude granted to bench verdicts:
"The use by the state of [certain prejudicial evidence] is improper and constitutes error, but while such error may be cause for reversal because of its prejudicial effect on a jury, it must affirmatively appear that in a bench trial the court relied on such testimony in arriving at its verdict in order for such error to be ground for reversal." Id., 68 Ohio App.3d at 758,589 N.E.2d at 495-496, citing State v. White (1968), 15 Ohio St.2d 146,44 O.O.2d 132, 239 N.E.2d 65, paragraph two of the syllabus.
In sum, based upon the entire trial record, including Detective Elking's testimony as well as the state's improper argument in rebuttal, we are forced to conclude that the proceedings were sufficiently tainted by prejudicial error so as to deprive the defendant of a fair trial. Defendant's two assignments of error are therefore sustained and the judgment and sentence of the Mercer Court of Common Pleas are reversed.
Judgment reversed and cause remanded.
THOMAS F. BRYANT and HADLEY, JJ., concur. *Page 477