OPINION
This appeal is taken by Defendant-Appellant Bryan L. Huffman, Sr. from the judgment entered by the Court of Common Pleas of Seneca County finding him guilty on one count of Gross Sexual Imposition, a felony of the third degree.
On the afternoon of June 5, 1998, Heather Cook (hereinafter "Heather"), a ten-year-old girl, was playing kickball with some friends from her neighborhood. After she finished she returned to her home. When Heather arrived at home she was greeted by her parents and a friend of her father's named Bryan Huffman Sr. (hereinafter "Huffman"). Huffman was accompanied by his two children, Bryan Huffman Jr. (hereinafter "Bryan") and Benjamin Huffman (hereinafter "Benny"). Bryan, Benny and Heather played at her home for a short while. All three children, Heather, Benny and Bryan, had plans to attend the St. Mary's festival the following day.
After all three were done playing the parents agreed that Heather, Bryan and Benny could have a sleepover at Huffman's that evening and then all could attend the St. Mary's Festival the following day together. After arriving at Huffman's residence Heather, Benny and Bryan played video games for a short while, ate dinner and then sat outside eating chips and drinking pop. Huffman set up a tent just outside his residence so that the children could camp out.
The three kids continued to play outside while inside the residence Huffman was finishing off a twelve-pack of beer. Huffman would intermittently return to the campsite to check on the kids. As it became dark outside Heather, Benny and Bryan were ready to go to sleep. Bryan and Heather prepared to sleep in the tent but Benny returned to the residence to sleep in his room. After Benny went inside Huffman returned to the campsite to check on Heather and Bryan. Both children were sleeping.
Huffman claims that when he returned Heather was moaning and groaning in her sleep as if she was scared so he grabbed her leg to try and awaken her but she just rustled a bit and continued to moan. Next, Huffman claims he rubbed her back to try and awaken her but she was asleep. Huffman then returned to the residence and finished whatever beer he had and went to sleep.
The next morning after a refreshing breakfast Heather, Benny, and Bryan went to the St. Mary's festival. After the festival Heather returned home and told her parents a story quite different from Huffman's story detailed above. Heather claimed that after Huffman went inside to put Benny to bed he returned to the tent. Once inside the tent he slowly moved his hand up Heather's thigh and cupped her vagina. Hoping he would stop Heather rolled over and Huffman placed his hand on her buttocks. Next, Huffman moved his hand to her stomach and slid it up her chest until he reached her breast. Heather testified that he did not caress or feel her breast. Heather rolled over and opened her eyes hoping to frighten him or make him stop and Huffman left abruptly.
Heather's parents confronted Huffman and he denied everything. Nearly two years later at a school event Heather approached some counselors and told the same story to them. Those counselors contacted the Department of Human Services. Finally on February 15, 2000, Detective Kevin P. Reinbolt (hereinafter "Reinbolt") received a call from the Department of Human Services advising of a possible sex abuse case implicating Huffman.
Reinbolt contacted Huffman concerning the case and asked Huffman if he'd come in and answer a few questions. Huffman voluntarily met with Reinbolt. During the interview Huffman confessed to touching Heather inappropriately two years earlier. The interview is in part:
Kevin: *** You came in to tell me your story.
Huffman: Yes, I did.
Kevin: Okay. Do you wish to speak with me?
Huffman: Sure.
 Kevin: Okay. And you understand that, uhm, you may leave at anytime and not answer any questions.
Huffman: Yes, I do.
***
Kevin: Okay. Who stayed? Who slept in the tent with Heather?
Huffman: Her and the boys.
 Kevin: Okay. Uhm, is there anything that happened that night that you feel I should know about?
Huffman: Yes.
Reinbolt: Okay. What's that?
Huffman: I fondled her leg.
 Reinbolt: Okay. You fondled her leg. Did you fondle her buttock?
Huffman: Yes.
 Reinbolt: Okay. Do you remember fondling anywhere else on Heather?
Huffman: No, I don't
Reinbolt: Are you sure?
Huffman: I was drunk that night. ***
After the interview Reinbolt turned the case over to the Seneca County prosecutor's office.
On April 12, 2000, the Grand Jury for the County of Seneca returned an indictment for Bryan L. Huffman, Sr., alleging that Huffman "did have sexual contact with Jane Doe, not the spouse of Bryan L. Huffman, Sr., and the said Jane Doe being less that thirteen (13) years of age ***". On April 13, 2000 the indictment was filed and an warrant for Huffman's arrest was immediately issued. On June 13, 2000 Huffman entered a plea of not guilty. The case proceeded to trial. On November 21, the jury returned a verdict of guilty. On that same day the trial court directed entry of the guilty verdict. On November 29, 2000 Huffman was sentenced to four (4) years in prison.
On appeal from that judgment entry Huffman presents several assignments of error. Each assignment of error presented will be addressed separately.
Instances of prosecutorial misconduct during closing argument were improper and prejudicial and deprived appellant of his right to a fair trial, in contravention of the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Sixteen of the Ohio Constitution.
In his first assignment of error Huffman argues that the prosecutor conducted himself improperly during closing arguments and such conduct was so prejudicial as to deprive him of a fair trial. At the outset it must be remembered that considerable latitude is permitted during closing argument. State v. Mauer (1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768. However, the prosecution "must avoid insinuations and assertions which are calculated to mislead the jury." State v. West (Nov. 23, 1999) Franklin App. No. 98AP-1527, unreported, at 4 (emphasis added) citingBerger v. United States (1935), 295 U.S. 78, 120, 55 S.Ct. 629,79 L.Ed. 1314. Further, the prosecution may not "express a personal belief or opinion on the credibility of a witness or the guilt of the accused."West at 4 citing State v. Thayer (1931), 124 Ohio St. 1, 176 N.E. 656.
In determining if an individual's right to a fair trial has been violated by the actions of the prosecution during closing arguments the relevant inquiry is "whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the defendant." State v. Smith (1984), 14 Ohio St.3d 13, 14 470 N.E.2d 883,885. As we stated in State v. Coffman (1998), 130 Ohio App.3d 467,720 N.E.2d 545, "this inquiry is guided by four factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of evidence against the defendant." Coffman at 471 citing Sidney v. Walter
(1997), 118 Ohio App.3d 825, 829, 694 N.E.2d 132, 134-135. Further, we must also be "mindful of the general maxim that prosecutorial misconduct is not grounds for reversal unless it so taints the proceedings that it deprives the defendant of a fair trial." Coffman at 471 citing State v.Phillips (1995), 74 Ohio St.3d 72, 90, 656 N.E.2d 643, 661, 662.
As stated above, a consideration in the review of alleged prosecutorial misconduct during closing arguments is whether or not the defendant objected to the improper remarks. In the instant appeal the record reveals that Huffman failed to object to any of the statements made by the prosecution during closing arguments.
It is long established that "to the extent the defendant did not object to allegedly improper statements, all error is waived but for plain error." State v. West (Nov. 23, 1999) Franklin App. No. 98-AP-1527, unreported, at 4 citing State v. Slagle (19920, 65 Ohio St.3d 597, 604,605 N.E.2d 916. "A `plain error' committed by a trial court and reviewable on appeal, is an obvious error shown by the record which is prejudicial to an accused although neither objected to nor affirmatively waived, which if allowed to stand would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." Statev. Craft (1977), 52 Ohio App.2d 1, 367 N.E.2d 1221, at paragraph one of the syllabus. To demonstrate plain error the appellant must show that but for the error "the outcome of the trial clearly would have been otherwise." State v. Evans (1992), 63 Ohio St.3d 231, 241, quoting Statev. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
Huffman claims that prosecution made several improper remarks during closing arguments that deprived him of a fair trial. Those remarks included:
 "I submit to you that this affirmative defense of intoxication is nothing but a sham." *** "Ladies and gentlemen, I submit to you this is a smoke screen. This is a guys (sic). This is a cheap means of trying to escape liability for what he's done in this act, in this case."
The foregoing statement made by the prosecutor inferred that Huffman did not have a right to the defense of intoxication and that he was using it to mask his guilt, however, under the law as it existed at the time of the crime Huffman indeed was afforded such a defense. As a result, the prosecution's statement was improper. Despite this, after careful examination of the nature of the statement, the strength of the evidence and the jury instructions, we do not feel that the statement rose to the level of prejudice required by the plain error standard.
Specifically, the evidence presented by Huffman at trial did not establish by a preponderance of evidence that his intoxication rose to the level necessary to establish a defense to the crime charged, gross sexual imposition. As stated by the Ohio Supreme Court, voluntary intoxication is available as an affirmative defense in rare instances where the accused is charged with a specific intent crime and can demonstrate that he was "so intoxicated as to be mentally unable to intend anything." State v. Otto (1996), 74 Ohio St.3d 555, 564,660 N.E.2d 711; State v. Fox (1981), 68 Ohio St.2d 53, 55, 428 N.E.2d 410. The only evidence presented at trial was the testimony of both Huffman and Heather that, Huffman had been drinking on the evening of June 5. However neither individual stated with any clarity to what extent Huffman was intoxicated or if Huffman's behavior was affected by the alcohol at all. Therefore, we cannot say that but for the improper remark made by the prosecution during closing arguments the outcome of the trial would have been different.
Furthermore, the remaining statements cited by Huffman as improper relate to matters of proof established or discussed at trial and thus are not improper. No prejudice having been shown Huffman's first assignment of error is overruled.
Appellant was deprived of his rights to effective assistance of counsel by trial counsel's numerous erroneous acts and omissions, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution.
In his second assignment of error Huffman argues that he was deprived of his right to effective assistance of counsel as guaranteed by the Ohio and Federal Constitutions because of the errors made by his attorney at trial. In support of this assertion Huffman presents the following arguments: 1) trial counsel failed "to file a timely motion to suppress appellant's statement to Detective Reinbolt in a timely manner prior to trial"; and 2) trial counsel failed to "timely object to the comments made by the prosecutor during closing arguments."
There is a two-prong test for determining the effectiveness of assistance of counsel. First, the attorney's performance must be deficient, falling below the objective standard of reasonable representation. Second, there must be a reasonable probability that, but for counsel's errors, the result of the case would have been different. See State v. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373;Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674.
First Huffman argues that his trial counsel was ineffective because he failed to file a timely motion to suppress appellant's statement to Detective Reinbolt in a timely manner prior to trial. In determining whether such an error rises to the level of ineffective assistance of counsel the Ohio Supreme Court has held that "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." State v. Madrigal (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52
quoting Kimmelman v. Morrison (1986), 477 U.S. 365, 384, 106 S.Ct. 2574,2587, 91 L.Ed.2d 305, 325. Such a decision on the part of trial counsel must be evaluated on a case-by-case basis.
Huffman argues that the statements made to Detective Reinbolt were inadmissible and had trial counsel filed a motion to suppress the motion would have been properly granted, the jury would never have heard his incriminating statements and thus, there would have been insufficient evidence to convict him. However, careful review of the record reveals the contrary contention.
The Fifth Amendment to the United States Constitution provides that an individual shall not "be compelled in any criminal case to be a witness against himself". The Supreme Court has extended the protection of theFifth Amendment right against self-incrimination to police interrogation of individuals in custody. Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, requires that before an individual in custody may be interrogated police officers must advise him of his constitutional rights to remain silent, to obtain an attorney or have an attorney appointed by the State if he is unable to afford one.
First the taped confession played at trial and outlined in detail above reveals that when Detective Reinbolt questioned Huffman he made sure that Huffman's presence was voluntary and consistently reassured Huffman he was free to leave at anytime. In addition, there is no evidence that Huffman was in custody at any time and in fact, Huffman left after the interview. Finally, Huffman by his own admission signed a waiver of rights form, waiving his "right to remain silent". Therefore, this court cannot say that Huffman's confession would have been suppressed had Huffman's trial counsel made a motion to suppress.
In regards to Huffman's second argument that trial counsel acted ineffectively by failing to object to the prosecutor's improper remarks during closing argument, as stated above, the remarks made by the prosecutor did not rise to the level necessary to show that the outcome of the trial would have been different.
No prejudice having been shown Huffman's second assignment of error is overruled.
The conviction in the trial court should be reversed because it was against the manifest weight of the evidence and because the evidence supporting them was insufficient as a matter of law to prove the conviction beyond a reasonable doubt.
In his third assignment of error Huffman claims that the judgment of the trial court should be reversed because insufficient evidence was presented to convict him of gross sexual imposition or in the event sufficient evidence was presented at trial that the greater weight of the evidence was in favor of acquittal.
Initially, we observe that "on the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Indeed, a judgment may be reversed on the weight of the evidence only if there is a concurrence of all three judges hearing the cause on appeal. Section 3(B)(3), Article IV, Ohio Constitution.
The legal concepts of sufficiency of the evidence and weight of the evidence are different. "Sufficiency is a term of art meaning that the legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997),78 Ohio St.3d 380, 382. To reverse a judgment of a trial court when there is insufficient evidence to support it, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary.Id. at paragraph three of the syllabus.
A claim that the verdict was against the manifest weight of the evidence does not mean that the evidence to convict was insufficient or inadequate. "Weight of evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. In reviewing a claim that the conviction was against the manifest weight of the evidence the court considering the entire record:
 "***weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus.
The power to reverse a conviction and order a new trial is discretionary and should only be used in exceptional circumstances when the evidence weighs significantly against the conviction. Id. at paragraph three of the syllabus.
Gross sexual imposition is a violation of R.C. 2907.05(A)(4), a felony in the third degree. R.C. 2907.05 is in pertinent part:
 No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when ***
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
In addition, "sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B)
The testimony offered by the State at trial in favor of conviction demonstrated that in 1998 Heather Cook was ten (10) years old and unmarried. Further, the State established that on the evening of June 5, 1998, Huffman did have physical contact with Heather's "erogenous" zones including her thigh, her vagina, and her buttock.
Despite this, Huffman argues that the State failed to show that Huffman acted "for the purpose of sexually arousing or gratifying either person." Specifically, Huffman argues that such "gratification" should not be inferred simply because the evidence offered establishes "physical contact". Should courts be allowed to infer such "gratification", argues Huffman, the element of "mental culpability" becomes superfluous and the violation is rendered a strict liability offense. This, Huffman argues, is untenable.
In determining whether or not an individual has acted "for the purpose of sexually arousing or gratifying either person" this court has stated that:
 "[T]he proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim."
 In the Matter of Alexander (Nov. 6, 1998), Marion App. No. 9-98-19, unreported. While no direct evidence was presented to demonstrate the sexual arousal or gratification of Huffman, we find this element can be demonstrated by inference. "Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." State v. Pruett (1971), 28 Ohio App.2d 29, 34,273 N.E.2d 884. In State v. Cobb, (1991), 81 Ohio App.3d 179,610 N.E.2d 1009, the court stated:
 "[T]he trier of fact [is permitted] to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved."
Id. at 185, 610 N.E.2d 1009. Since circumstantial evidence and direct evidence inherently possess the same probative value, circumstantial evidence of intent is admissible to demonstrate the sexual contact element of gross sexual imposition. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus; see, also, State v. Nicely (1988), 39 Ohio St.3d 147, 151, 529 N.E.2d 1236;State v. Shue (1994), 97 Ohio App.3d 459, 466, 646 N.E.2d 1156.
Viewing the facts and circumstances surrounding the events that occurred on the evening of June 5, 1998, we conclude that the evidence demonstrates that Huffman did engage in physical contact with the unmarried, ten year old Heather Cook with the purpose of sexual gratification. Furthermore, it must be remembered that the jury at trial heard all of the evidence, was instructed as to the law and found Huffman guilty beyond a reasonable doubt. Therefore, we do not conclude that the jury lost its way or that by its verdict has caused a miscarriage of justice. No error having been shown, Huffman's third assignment of error is overruled.
The trial court committed prejudicial error by failing to make a determination as to whether the inculpatory answers of the appellant to custodial interrogation were obtained in violation of appellant's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.
In his final assignment of error Huffman claims that the trial court erred by failing to hold an evidentiary hearing to determine if the statements he gave to Detective Reinbolt were obtained in violation of his rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. However, as outlined above there was no evidence presented at trial that Huffman's statements were taken in violation of his constitutional rights. Therefore, Huffman's final assignment of error is overruled and the judgment of the Court of Common Pleas of Seneca County is affirmed.
Judgment affirmed.
 _____________ BRYANT, J.
WALTERS, P.J., and SHAW, J., concur.