OPINION
{¶ 1} Appellant, James M. DeWalt, timely appeals his minor misdemeanor conviction for failure to yield half the roadway, a violation of R.C.4511.26, following his bench trial before the Carroll County Court. His charge arose from a motor vehicle accident that occurred on County Road 52, known as Caddy Road, in Carroll County, Ohio. He was convicted primarily on the testimony of the state trooper who investigated the accident. Appellant asserts four assignments of error on appeal. He argues that his conviction was not supported by sufficient evidence; that it was against the manifest weight of the evidence; that the trial court erred in refusing to allow him to introduce a certain photograph as an exhibit; and that the trial court should not have allowed a state patrol trooper to testify as an accident reconstruction expert when his training was only in accident investigation. For the following reasons, we agree with Appellant that the state patrol trooper was not an expert on accident reconstruction, and the conviction must be reversed.
 {¶ 2} On June 29, 2006, at approximately 2:00 p.m., Appellant was driving his 1989 Chevy pickup truck eastbound on County Road 52 in Carroll County. Appellant was 65 years old at the time. A 1999 Dodge Durango truck, driven by 17-year-old Michael Bolon, was heading in the opposite direction. The two vehicles collided at a slight crest in the road. The road is a rural two-lane chip-and-seal road. The yellow center line was almost completely faded away at the time of the accident. Both vehicles pulled off the road. The accident was reported to the police, and Trooper Armstrong was dispatched to investigate. When he arrived, he saw that Mr. Bolon was already being treated by an emergency medical services technician. The *Page 2 
trooper obtained a statement from Appellant and took some photos of the accident scene. He cited Appellant for failure to yield half the roadway to oncoming traffic, R.C. 4511.26, a minor misdemeanor. The case was heard at a bench trial on August 8, 2006. The two drivers and Trooper Armstrong testified at the trial. The trial court was persuaded by Trooper Armstrong's accident reconstruction analysis and found Appellant guilty. He was fined $100 plus court costs. This timely appeal followed.
 {¶ 3} Appellant presents four assignments of error. The second assignment of error, dealing with whether Trooper Armstrong should have been allowed to testify as an accident reconstruction expert, is dispositive of this appeal and will be considered first.
 {¶ 4} Appellant's second assignment of error alleges:
 {¶ 5} "THE TRIAL COURT ERRED IN QUALIFYING THE TROOPER AS AN EXPERT ON ACCIDENT RECONSTRUCTION."
 {¶ 6} Appellant argues that the trial court erred in qualifying Trooper Armstrong as an expert in accident reconstruction at trial. Trooper Armstrong testified that he had special training in accident investigation, but it is obvious from the record that his expert testimony was used to give opinions concerning accident reconstruction rather than simple accident investigation. Trooper Armstrong gave an expert opinion that Appellant had traveled left of center based on his view as to the manner of the accident and his conclusions about the exact point of impact. It is apparent from the trial court's own comments prior to rendering a verdict that the judge was swayed by Trooper Armstrong's accident reconstruction analysis. There is nothing in the record indicating that Trooper Armstrong had any training or special *Page 3 
knowledge in accident reconstruction, and therefore, Appellant's argument is persuasive and constitutes reversible error.
 {¶ 7} A trial judge has a special obligation to ensure that scientific testimony is not only relevant but reliable. Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786,125 L.Ed.2d 469; State v. Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084,854 N.E.2d 1038. However, a trial court's ruling on the admissibility of an expert's testimony is within its broad discretion and will not be disturbed absent an abuse of discretion. State v. Jones (2000),90 Ohio St.3d 403, 414, 739 N.E.2d 300, citing State v. Awkal (1996),76 Ohio St.3d 324, 331, 667 N.E.2d 960. The term abuse of discretion is more than an error of law or judgment. It indicates that the court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 8} Evid.R. 702 governs the admission of expert testimony, and states in part:
 {¶ 9} "A witness may testify as an expert if all of the following apply:
 {¶ 10} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 11} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 12} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *" *Page 4 
 {¶ 13} It has been held that a prospective witness does not have to be the best witness on the topic to qualify as an expert. Alexander v. Mt.Carmel Medical Center (1978), 56 Ohio St.2d 155, 159, 383 N.E.2d 564. Instead, a potential expert must demonstrate knowledge greater than that possessed by an average juror. State Auto Mut. Ins. Co. v. ChryslerCorp. (1973), 36 Ohio St.2d 151, 160, 304 N.E.2d 891.
 {¶ 14} In the instant matter, Trooper Armstrong testified that he had been with the state highway patrol for six years prior to his investigation of this accident. Armstrong took photographs and measurements at the scene of the crash. Armstrong testified that both Appellant and the driver of the other vehicle denied driving left of center prior to the collision. (Tr., pp. 17, 20.)
 {¶ 15} When Appellant's counsel questioned Armstrong's ability to testify as an expert in accident reconstruction, the trial court conducted a limited voir dire during which Armstrong explained that he had received some crash investigation training during his initial six-month officer training. In addition, he attended and successfully passed a two-week, eighty-hour training course as a technical crash investigator offered by the Ohio State Highway Patrol. He explained that this program was designed to teach what a crash scene is "telling you." For example, he explained that the training taught him how to determine if skid marks are from a specific tire and how to determine the speed of a vehicle prior to a crash based on its placement after the accident. (Tr., pp. 21-22.)
 {¶ 16} Armstrong's voir dire testimony also reveals the following,
 {¶ 17} "COURT: Why would a trooper wish to take this type of training? *Page 5 
 {¶ 18} "A. Uhm to be able to uhm investigate the crashes a lot better I mean there are some people that I mean when you come out of the academy you may not be a hundred percent sure of what the crash scene is telling you uhm with this invest/or [sic] with this training and the investigation uhm you're able to go out and look at a crash scene and maybe pick up on details that you weren't aware of before that this training uh enlightens you to.
 {¶ 19} "* * *
 {¶ 20} "[Appellant's counsel]: Uhm Mr. Armstrong are you familiar with the uh Accreditation Commission for Traffic Accident and Reconstruction?
 {¶ 21} "A. No I'm not.
 {¶ 22} "Q. Uhm so you/you've taken this two week uh technical class from the Highway Patrol but you don't really know what additional training is available for people who might want to specialize in tr/in [sic] accident reconstruction is that correct?
 {¶ 23} "A. That's correct.
 {¶ 24} "* * *
 {¶ 25} "Q. Uhm did your uh training class include any of the principles of physics in uh being able to compute the amount of energy uh contained by each participant in an accident?
 {¶ 26} "A. Yes it did.
 {¶ 27} "Q. And can you explain how Newton's first law of mechanics applies to the reconstruction of an accident?
 {¶ 28} "A. I don't recall that first law at this time. *Page 6 
 {¶ 29} "Q. Ok was that something that was covered in your technical training class?
 {¶ 30} "A. Yes it was and I carry the handbook with me in my patrol car." (Tr., pp. 22-24.)
 {¶ 31} Thereafter, the state proceeded with Armstrong's direct testimony. The prosecutor asked Armstrong to state his opinion as to the cause of this accident. Armstrong concluded that Appellant's vehicle went left of center and caused this accident. (Tr., pp. 23-25.)
 {¶ 32} On appeal, Appellant claims that the Ohio Supreme Court disallowed this same type of testimony in a factually similar case. He claims that the Ohio Supreme Court specifically held that a law enforcement officer who investigates an accident cannot testify as to causation, citing Scott v. Yates (1994), 71 Ohio St.3d 219,643 N.E.2d 105. Scott is a civil personal injury case arising out of a head-on car collision. Each of the drivers asserted that the other crossed the center line and caused the accident. At trial, the court permitted the investigating officer to testify as an expert and give his opinion as to causation. The jury found in favor of the plaintiff, who had called the investigating officer as a witness.
 {¶ 33} Upon reviewing the facts, the Scott Court determined that the trial court abused its discretion in allowing the officer to testify as to causation. In Scott, the deputy's testimony revealed that he had a high school education and that he subsequently attended the police academy, where he spent about two weeks on accident investigation. Thereafter, the deputy testified that he, "was unfamiliar with the theory of conservation of momentum and consequently did not know how it might *Page 7 
affect the post-impact course of motor vehicles involved in a crash. Nor did he know the formula for calculating the speed of motor vehicles, either before or after impact, or what effect speed would have upon the post-impact course of vehicles." Id. at 221. Further, the deputy readily admitted that he was not an accident reconstructionist. Id. Based on the foregoing, the Supreme Court concluded that the deputy was not qualified to give his opinion on causation of the accident because he was not trained in accident reconstruction. Id.
 {¶ 34} Although Scott is a civil case, the legal principle under review arose from an interpretation of Evid.R. 702, dealing with expert witnesses, and this evidentiary rule applies equally to civil and criminal cases. State v. Craig, 110 Ohio St.3d 306, 2006-Ohio-4571,853 N.E.2d 621, ¶ 78; State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845,817 N.E.2d 29, ¶ 88. In criminal cases, an error in the admission of expert testimony is deemed to be reversible error unless it is found to be harmless beyond a reasonable doubt. State v. Whitt (1991),68 Ohio App.3d 752, 753, 589 N.E.2d 492. The Scott case is regularly cited as authority in criminal appellate caselaw. State v. Hartman (2001),93 Ohio St.3d 274, 287, 754 N.E.2d 1150; State v. Scott, 8th Dist. No. 88084, 2007-Ohio-2111, ¶ 32; State v. Jackson, 10th Dist. No. 02AP-867,2003-Ohio-6183, ¶ 33.
 {¶ 35} The instant matter presents many of the same circumstances that occurred in Scott. Trooper Armstrong appears to have attended a similar two-week course in accident investigation as the officer inScott. Trooper Armstrong indicated that he was not trained in accident reconstruction and did not know what kind of training was available in that area. There is no indication in the record that Trooper *Page 8 
Armstrong had ever previously testified as an accident reconstruction expert. Yet, he was permitted to give expert opinion testimony as to both the exact cause of the accident and the exact point in the roadway where the impact occurred. Although Trooper Armstrong stated he had training in interpreting tire skid marks, there were no such marks in this case to aid him in his analysis. Thus, under the facts of this case, Trooper Armstrong should not have been permitted to reconstruct and identify the point of impact in order to establish that Appellant had crossed the center line.
 {¶ 36} Appellee argues that police officers have long been permitted to testify regarding the point of impact of an accident, citingSchaffter v. Ward (1985), 17 Ohio St.3d 79, 477 N.E.2d 1116, in support.Schaffter, like Scott v. Yates, supra, involved a personal injury lawsuit arising from a head-on auto collision. The plaintiff wished to have a mechanical engineer testify as to point of impact. The trial court excluded the evidence on the basis that the expert testimony would not be helpful to the jury because there were eyewitnesses to the accident, namely, the passengers in the two vehicles. The Ohio Supreme Court held that, due to the adoption of Evid.R. 704 in 1980, expert testimony regarding the ultimate issues in the case, such as point of impact, was generally admissible at trial. Id. at 81. TheSchaffter Court permitted the mechanical engineer to testify.
 {¶ 37} It is not clear how Schaffter supports Appellee's argument. Certainly, Appellee cannot compare Trooper Armstrong's qualifications with that of a mechanical engineer. Schaffter does discuss the fact that it is not always necessary for an expert to establish the point of impact in a car accident because often there are independent eyewitnesses to the accident who can simply tell the jury what they *Page 9 
observed. If a witness, including a state trooper, actually witnessed the point of impact, then the trooper could readily testify as to the point of impact without being certified as an expert. InSchaffter, though, as in the instant case, there were no independent eyewitnesses to the accident. Both Appellant and Mr. Bolon were involved in the accident, and as such, are interested parties. In such a situation, Schaffter concluded that expert testimony could provide helpful additional evidence for the jury to consider. There is no doubt that an expert witness trained in accident reconstruction would have been helpful in the instant case. Neither party provided such a witness, but this absence did not give the trial court license to accept, as an accident reconstruction expert, a state trooper's testimony when that state trooper did not posses the proper qualifications.
 {¶ 38} There is no dispute that a police officer may present his or her direct observations as a layperson relating to an accident, a criminal violation, or an investigation. Tolliver v. Braglin, 4th Dist. No. 03CA18, 2004-Ohio-731, ¶ 9; State v. Rutter, 4th Dist. No. 02CA17, 2003-Ohio-373, ¶ 52-54; State v. Woods (Aug. 21, 1998), 7th Dist. No. 94-CA-129. Trooper Armstrong, though, did not observe the accident, and his testimony was much more than a simple description of his investigation. He extrapolated, primarily from his observation of a scratch mark in the asphalt, that Appellant's vehicle must have been on Mr. Bolon's side of the road when the accident occurred.
 {¶ 39} It is undoubtedly true that the mere label of "accident investigator" versus "accident reconstructionist" is not determinative of an expert's qualifications. See, e.g., State v. Rhodes (Dec. 14, 2001), 11th Dist. No. 2000-L-089. A court must *Page 10 
examine the expert's qualifications, education, and knowledge in order to determine the scope of his or her expertise. Id. "Once qualified, an expert witness may give an opinion only as to matters within his or her expertise." Metro. Life Ins. Co. v. Tomchik (1999), 134 Ohio App.3d 765,777, 732 N.E.2d 430, citing State v. Hopfer (1996), 112 Ohio App.3d 521,559, 679 N.E.2d 321. In the case sub judice, Trooper Armstrong testified that he attended an eighty-hour crash investigation course, however, nothing he said he learned at that course indicated that it provided him with the qualifications to extrapolate the point of impact of an accident based on his interpretation of a scratch in the road and the damage to the vehicles.
 {¶ 40} Once we have determined that it was error for the trooper to have testified as to the ultimate issue in this case, we must next determine whether such error was harmless. The record is clear on this issue; the error impacted heavily on this case. The trial court stated at the end of the trial that it relied significantly on Trooper Armstrong's testimony in reaching its verdict:
 {¶ 41} "Trooper Armstrong's testimony was forthright * * * I was extremely impressed with that two weeks training that I did not understand what it entailed or what it involved to become a technical crash investigator. * * * So I have to tell you Mr. DeWalt his testimony is what I am relying on the most here. * * * the scientific evidence and the trained person who was there to analyze what occurred is the most weight that I'm giving here today." (Tr., pp. 81-82.)
 {¶ 42} Because we have determined that the trial court committed error in allowing Trooper Armstrong to testify as an expert in accident reconstruction, and the error is not harmless, we sustain Appellant's second assignment of error. *Page 11 
 {¶ 43} Appellant's third assignment of error states:
 {¶ 44} "THE TRIAL COURT ERRED IN REFUSING TO ADMIT DEFENDANT'S EXHIBIT 6."
 {¶ 45} Appellant was precluded at trial from submitting defendant's exhibit six, a photograph, after the state's objection to its admission. Appellant argues that this photo depicts a mark in the road made by his truck on the day of the accident. He claims that the mark was made by his driver's side left tire since this tire was flattened as a result of the accident and that the placement of this mark established that his vehicle was on his side of the road at the time of the accident.
 {¶ 46} Under Evid.R. 403, the admission or exclusion of photographic evidence rests within the sound discretion of the trial court. State v.Landrum (1990), 53 Ohio St.3d 107, 121, 559 N.E.2d 710. Upon review, the exclusion of the photograph was not an abuse of discretion. There were a number of reasonable grounds for excluding the photograph from evidence. First, photographs may be excluded from evidence because they are irrelevant. Evid.R. 402. A photograph may be irrelevant when it is being used to depict at a time period that is not the period at issue in trial. State v. Jones, 9th Dist. No. 22231, 205-Ohio-1274, ¶ 24;Corso v. Regan (June 2, 1994), 8th Dist. No. 65077. Appellant introduced the photograph to show that his truck left a mark on his side of the road when the accident occurred. The trial court excluded this photograph based on the fact that it was not taken until approximately two days before the trial and about 38 days after the accident. It is not unreasonable to conclude that a scratch or scuff mark on a rural chip-and-seal road might have changed considerably after 38 days, or that the *Page 12 
mark might not have been caused by this accident or this vehicle. Therefore, it was not unreasonable to exclude the photograph from admission as evidence at trial.
 {¶ 47} Further, a court may exclude a photograph because it is cumulative of other evidence. State v. Monroe, 105 Ohio St.3d 384,2005-Ohio-2282, 827 N.E.2d 285, ¶ 27. There were other photographs already in the record showing the full scene of the accident, and Appellant's additional photograph did not appear to add anything material to those photos. The trial court did not abuse its discretion in excluding the photograph, and this assignment of error is overruled.
 {¶ 48} Based on the foregoing, Appellant's third assignment of error is overruled.
 {¶ 49} Appellant's first and fourth assignments of error are as follows:
 {¶ 50} "THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. DEWALT BY DETERMINING THAT THERE WAS SUFFICIENT EVIDENCE TO CONVICT HIM OF THE TRAFFIC OFFENSE OF FAILURE TO YIELD HALF OF THE ROADWAY, WHEN THE STATE'S MAIN PROSECUTION WITNESS ACKNOWLEDGED UNDER OATH THAT MR. DEWALT'S ACCOUNT OF THE ACCIDENT IS POSSIBLE.
 {¶ 51} "THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 52} Appellant here is challenging the weight of the evidence. Although Appellant's first assignment of error is framed in terms of the sufficiency of the evidence, in practical effect, it also presents a question of the weight of the evidence. Appellant is arguing that the evidence does not meet the criminal standard of proof, *Page 13 
or proof beyond a reasonable doubt, because Trooper Armstrong acknowledged that the possibility that Appellant did not actually cross the center line. Appellant is incorrect. R.C. 2901.05, which defines "reasonable doubt," states in part: "Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. `Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." Simply because the evidence may be interpreted to support the mere possibility of innocence, the trier of fact may still believe beyond a reasonable doubt that the defendant is guilty. State v. Jenks (1991), 61 Ohio St.3d 259, 279, 574 N.E.2d 492. Trooper Armstrong's acknowledgement of the mere possibility that Appellant may not have crossed the center line goes to the weight and not the sufficiency of the evidence.
 {¶ 53} Regardless, given our resolution of assignment of error number two, these assignments of error concerning the weight of the evidence are rendered moot. A reversal based on the weight of the evidence does not result in a dismissal of the charges, but rather, a remand for retrial. State v. Trembly (2000), 137 Ohio App.3d 134, 140,738 N.E.2d 93. Because we have remanded for retrial based on assignment of error number two, no further relief could be granted by reviewing these assignments of error.
 {¶ 54} In conclusion, we sustain Appellant's second assignment of error. The trial court committed reversible error in allowing a state trooper to testify as an expert in accident reconstruction when his expertise was only in accident investigation. The *Page 14 
expert opinion given by Trooper Armstrong clearly required special knowledge beyond that of basic accident investigation skills. The trial court acknowledged that Trooper Armstrong's testimony was a vital part of the guilty verdict, and therefore, the error was not harmless beyond a reasonable doubt. We reverse Appellant's conviction and remand this case to the trial court for retrial or other proceedings consistent with this Opinion.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1